UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

DERRON DEVORE AND TANIA MCCARTHUR,

                                Plaintiffs,

      -against-

THE CITY OF NEW YORK, POLICE OFFICER
NASSON INNOCENT #28787, POLICE OFFICER
GABRIEL ECHEVARRIA #28483, SERGEANT FRITZ
GLEMAUD #3224, DETECTIVE RASHON LACOSTE,
AND JOHN DOES #1-3,

                                Defendants.

------------------------------------------------------------------------ x

**COMPLAINT AND JURY DEMAND**

Docket # 15CV21

## PRELIMINARY STATEMENT

1. This is a civil rights action in which plaintiffs seek relief for the violation of their rights secured by 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of New York.

2. The claims arise from a July 10, 2013 incident in which Officers of the New York City Police Department ("NYPD"), acting under color of state law, intentionally and willfully subjected plaintiffs to, among other things false arrest and excessive force.

3. Plaintiffs seek monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4. This action is brought pursuant to 28 U.S.C. §1331, 42 U.S.C. §1983, and the First, Fourth and Fourteenth Amendments to the United States Constitution. The amount in controversy exceeds $75,000.00 excluding interest and costs.

5.  Venue is laid within the United States District Court for the Eastern District of New York in that Defendant City of New York is located within, and the events occurred within, the boundaries of the Eastern District of New York.

## PARTIES

6.  Plaintiffs are citizens of the United States and at all times here relevant resided in Kings County, City and State of New York.

7.  The City of New York is a municipal corporation organized under the laws of the State of New York. At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

8.  The defendant officers, at all times here relevant, were police officers of the NYPD, and as such were acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, defendants were involved in the decision to arrest plaintiffs without probable cause or failed to intervene in the actions of their fellow officers when they observed them arresting and assaulting plaintiffs without probable cause. On information and belief, at all times relevant hereto, defendant officers were under the command of Narcotics Bureau Brooklyn North and are sued in their individual capacities.

9.  At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

**FACTUAL ALLEGATIONS**

10. On July 10, 2013, plaintiffs were inside their home at 27 E98th St., Brooklyn NY. Plaintiff Devore lived in the top floor apartment of the home and plaintiff McCarthur lived in the first floor apartment. A third apartment, located in the basement, was the home of other family members. At approximately 5PM, Detective Lacoste entered the location without probable cause or explanation and walked into the backyard where plaintiff McCarthur was sitting with her infant daughter. The Detective did not explain to plaintiff why he was in the home or in the backyard.

11. Plaintiff immediately brought her daughter to a safe location on the upper floors of the home and returned to the front of the house where several officers were gathered. Plaintiff waited and watched from the front stoop as several individuals were detained outside and officers came in and out of the basement apartment of the home. Eventually, plaintiff walked in to the basement apartment where she observed officers searching and she began to video tape the events.

12. When one of the defendant officers realized plaintiff McCarthur was in the basement and filming, he asked another officer to "get that bitch out of here". The officers forcefully grabbed and twisted plaintiff's arm and tossed her phone to the ground. She was forcefully handcuffed and eventually escorted to a police vehicle outside.

13. At approximately the same time that plaintiff McCarthur entered the basement apartment, plaintiff Devore heard a commotion outside the home and walked out to the stoop. Realizing that officers were inside the basement area, he walked inside to observe what was happening and to insure his family members weren't injured. Once inside, he observed the defendant officers assaulting plaintiff McCarthur and damaging the apartment as they conducted

3

a search. When plaintiff Devore complained, he was choked and taken to the ground. Once on the ground he was handcuffed and escorted to a police vehicle waiting outside.

14. More than 24 hours after her illegal arrest, plaintiff McCarthur was released by a Brooklyn criminal court judge. Soon after her release, plaintiff received medical attention for a swollen arm. She was instructed to keep the arm immobile in a sling and was prescribed pain medication. After making several court appearances, the case has been dismissed and sealed.

15. More than 24 hours after his illegal arrest, plaintiff Devore was released by a Brooklyn criminal court judge. After several court appearances, the matter was ultimately dismissed and sealed.

16. At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate plaintiffs' rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against plaintiffs, and agreed, shortly after the incident, not to report each others' illegal actions and to fabricate a story and falsely charge plaintiffs with offenses, to justify the injuries and arrests.

17. During all of the events above described, defendants acted maliciously and with intent to injure plaintiffs.

## DAMAGES

18. As a direct and proximate result of the acts of defendants, plaintiffs suffered the following injuries and damages:

    a.    Violation of their rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution to be free from an unreasonable search and seizure;

b.      Violation of their right to Due Process of Law under the Fourteenth Amendment to the United Stated Constitution;

c.      Violation of their New York State Constitutional rights under Article 1, Section 12 to be free from an unreasonable search and seizure;

d.      Violation of their New York State Constitutional right under Article 1, Section 6 to Due Process of Law;

e.      Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety and separation from family;

f.      Loss of liberty;

## FIRST CAUSE OF ACTION
(42 U.S.C. § 1983)

19.    The above paragraphs are here incorporated by reference.

20.    Defendants acted under color of law and conspired to deprive plaintiffs of their civil, constitutional and statutory rights to be free from unreasonable search and seizure, due process of law under the First, Fourth and Fourteenth Amendments to the United States Constitution, and are liable to plaintiffs under 42 U.S.C. §1983.

21.    Defendants falsely arrested plaintiffs and failed to intervene in each other's obviously illegal actions.

22.    Plaintiffs have been damaged as a result of defendants' wrongful acts.

## SECOND CAUSE OF ACTION
(MUNICIPAL AND SUPERVISORY LIABILITY)

23.    The above paragraphs are here incorporated by reference.

24. The City is liable for the damages suffered by plaintiffs as a result of the conduct of their employees, agents, and servants, in that, after learning of their employees' violation of plaintiffs' constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event.

25. The City has been alerted to the regular use of false arrests by its police officers, but has nevertheless exhibited deliberate indifference to such false arrests; that deliberate indifference caused the violation of plaintiffs' constitutional rights in this case.

26. The aforesaid event was not an isolated incident. The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers stop and frisk citizens without reason, use excessive force, unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

27. For example, the well documented failures of the Civilian Complaint Review Board ("the CCRB"), a City agency, to substantiate obviously meritorious citizen complaints have gone uncorrected. The CCRB regularly finds complainants lack credibility based on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to them. In addition, the CCRB virtually never initiates their own findings of false statements against officers who have

made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

28.     The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct. The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer.

29.     Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected. Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated their law department from the discipline of police officers, so that civil suits against police officers for actions taken in their capacity as police officers have no impact on the officers' careers, regardless of the outcome of the civil actions. Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.

30.     The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiffs' civil rights,

without fear of reprisal.  Furthermore, although the City has been on notice, through plaintiffs' complaints to the CCRB from the first day of the incidents complained of, the City has failed to remedy the wrong.

31.　Plaintiffs have been damaged as a result of the deliberate indifference of the City to the constitutional rights of the City's inhabitants.

WHEREFORE, plaintiffs demand judgment against the defendants, jointly and severally, as follows:

A.　In favor of plaintiffs in an amount to be determined by a jury for each of plaintiff's causes of action;

B.　Awarding plaintiffs punitive damages in an amount to be determined by a jury;

C.　Awarding plaintiffs reasonable attorneys' fees, costs and disbursements of this action; and

D.　Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.

DATED: Brooklyn, New York
January 2, 2015

TO: New York City
Corporation Counsel Office
100 Church Street, 4th floor
New York, NY 10007

Police Officer Nasson Innocent
Sgt. Fritz Glemaud
Brooklyn North Narcotics
245 Glenmore Ave.
Brooklyn NY 11207

Police Officer Gabriel Echevarria

Detective Rashon Lacoste

Very truly yours,

*Nicole Bellina*

Stoll, Glickman & Bellina, LLP
By: Nicole Bellina
Attorney for Plaintiff
475 Atlantic Ave. 3rd Fl.
Brooklyn, NY 11217
(718) 852-3710
nicole_bellina@yahoo.com